**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**ERIC HOLLOWAY, JONNY BOADU,**
**and LAMBERT DOMEY** **PLAINTIFFS**

**V.** **4:12CV00074 JMM**

**SOS STAFFING SERVICES INC. and**
**SCHLUMBERGER TECHNOLOGY**
**CORPORATION** **DEFENDANTS**

## ORDER GRANTING SUMMARY JUDGMENT

Pending are the Defendants' Motions for Summary Judgment. The Plaintiffs have responded and the Defendants have replied. For the reasons set forth below, the Motions for Summary Judgment are GRANTED. Plaintiffs' Motion for Recusal is DENIED.

### I. Facts

Defendant Schlumberger Technology Corporation ("Schlumberger") is an oilfield service provider which employs tens of thousands of employees around the world. (Declaration of Helen Milam, attached as Exhibit A, at ¶¶ 2-4). In 2010, Schlumberger provided services to customer well-sites in and around Arkansas out of one of its facilities located in Conway, Arkansas. (Declaration of Phil Strassle, attached as Exhibit B, at ¶ 3). Defendant SOS Staffing Services, Inc. ("SOS") is a staffing agency with operations in Conway, Arkansas, among other places. (Douthitt Dec., Exhibit 1, at ¶ 4). In addition to Schlumberger's direct employees, Schlumberger contracted with temporary staffing agencies, such as SOS, for temporary labor to satisfy job and labor demands in particular locations, including Conway, Arkansas. (Milam Decl. ¶5).

In Conway, SOS recruited and hired Equipment Operator Trainees as temporary labor for Schlumberger. (Deposition of Eric Holloway, attached as Ex. D, at 24:20-27:17; Deposition of

Jonny Boadu, attached as Ex. E, at 39:9-40:3, 74:3-75:1; Domey Dep. 40:21-42:9, 51:19-52:21; Strassle Decl. ¶ 5). The contract staffing arrangement created a probationary period allowing Schlumberger the opportunity to observe the contractor's performance and the contractors an opportunity to determine if they like the work. (Strassle Decl. ¶ 6). However, if the temporary contractor performed adequately during this temporary assignment, it was to Schlumberger's financial and productivity benefit to make the contractor a permanent hire on Schlumberger's full time payroll. (Strassle Decl. ¶ 7). Thus, depending upon work demand, staffing level, and recommendations from Schlumberger Team Leaders, Schlumberger might extend permanent job offers to – or "roll over" – successful equipment operator trainees after review of their work while on temporary assignment to Schlumberger. (Strassle Decl. ¶ 9). If the SOS contractor was not performing satisfactorily or was no longer needed, Schlumberger would notify SOS that it was cancelling the SOS contractor's assignment to Schlumberger. (Strassle Decl. ¶ 9). Schlumberger did not control whether SOS assigned the contractor to other companies or retained the contractor as an internal employee. (Milam Decl. ¶ 9; Boadu Dep. 118:2-10; Holloway Dep. 120:2-11).

SOS Staffing hired Plaintiff Eric Holloway on December 30, 2009. (ECF No. 32-2). Plaintiff Lambert Domey began working for SOS Staffing on January 21, 2010. *Id.* SOS Staffing hired Plaintiff Jonny Boadu on March 21, 2010. *Id.* SOS Staffing placed Mr. Holloway, Mr. Domey, and Mr. Boadu with Schlumberger as temporary employees working as Equipment Operator Trainees; as Equipment Operator Trainees, they were being trained by Schlumberger to service aspects of the hydraulic fracturing ("fracking") process. (Douthitt Dec., 32-1, at ¶ 8).

Each work day, Schlumberger workers arrived at the Schlumberger yard and,

using a code, clocked in at a computer terminal. (Holloway Dep., ECF No. 32-5, at 30:7-19; Domey Dep., ECF No. 32-3, at 54:12-20; Boadu Dep., ECF No. 32-6, at 40:15-24). Once the entire crew arrived at the Schlumberger yard and clocked in, the crew was transported to a job site. (Holloway Dep., ECF No. 32-5, at 32:6-13; Domey Dep., ECF No. 32-3, at 55:13-15; Boadu Dep., ECF No. 32-6, at 41:17-19). At the end of the work day, the crew was transported back to the Schlumberger yard. (Holloway Dep., ECF No. 32-5, at 95:8-10; Domey Dep., ECF No. 32-3, at 55:13-15; Boadu Dep., ECF No. 32-6, at 90:11-16). All members of a given crew should have worked approximately the same amount of time on a given day. (Holloway Dep., ECF No. 32-5, at 110:3-7). Approximately once a week, crew members reviewed their timesheets and signed them. (Domey Dep., ECF No. 32-3, at 55:18-20). Crew members also completed handwritten timesheets "to compare" to the computer-generated time records. (Domey Dep., ECF No. 32-3, at 82:20-83:5; see also Holloway Dep., ECF No. 32-5, at 95:22-25). Schlumberger reported to SOS Staffing the number of hours each SOS Staffing employee worked for Schlumberger, and SOS Staffing paid its employees' wages. (Douthitt Dec., ECF No. 32-1, at ¶ 11).

In 2010, Phil Strassle ("Strassle") was the Field Service Manager for Schlumberger at the Conway location. (Strassle Decl. ¶ 3). Strassle was not regularly in the field or familiar with the temporary labor. (Strassle Decl. ¶ 8; see also Holloway Dep. 106:22-107:12; Boadu Dep. 105:15-106:7). Schlumberger's Team Leaders, recognizable by their orange hard hats, supervised the work of the direct and temporary laborers in the field. (Holloway Dep. 28:25-29:23; Boadu Dep. 72:24-73:2; Domey Dep. 83:16-25). The Team Leaders out of the Conway facility in 2010 included Michael Leal ("Leal") (an Hispanic supervisor), Blake

Montgomery ("Montgomery") (a white supervisor), and Tolani "Thaddeus" Gboyega ("Gboyega") (a black supervisor). (Strassle Decl. ¶ 16; Declaration of Mike Leal, attached as Ex. F, at ¶¶ 3-4). In 2010, Strassle was tasked with reviewing the SOS contractors with assignments over 60 days to determine roll over possibilities. (Milam Decl. ¶ 13).

In June 2010, Schlumberger's dispatcher, Zachary Coleman ("Coleman"), reported to his supervisor, Strassle, that he witnessed Domey appear at the Conway facility, submit a time entry, and then leave the facility without working. (Declaration of Zachary Coleman, attached as Exhibit G; Strassle Decl. ¶10.) According to the Defendant, Strassle met with Coleman the next day to investigate and saw Domey appear at the facility, clock in, and leave the facility without working. (Strassle Decl. ¶¶ 11, 12.). Additionally, Strassle reviewed Domey's job performance and work ethic with Domey's Team Leaders, including Leal, Montgomery, and Gboyega. (Strassle Decl. ¶¶ 16-18; Leal Decl.¶¶ 7-9.) Domey's Team Leaders did not recommend to Strassle that Domey should be permanently hired. (Strassle Decl. ¶¶ 17-18; Leal Decl. ¶ 9.) Instead, Strassle received negative feedback regarding Domey's performance and work ethic. (Strassle Decl. ¶ 17.). On or about June 28, 2010, Strassle notified SOS that Domey falsified his timesheet and that Schlumberger was cancelling Domey's assignment to Schlumberger. (Strassle Decl. ¶ 20; Strassle Email, attached as Ex. B-1 to Strassle Decl.). SOS terminated Domey's employment in late June or early July 2010. (Domey Dep. 49:14-23; 72:15-73:4; Domey EEOC Charge, attached as Ex. 19 to Domey Dep.)

Following the Domey time theft incident, Strassle reviewed the timesheets of other SOS contractors identified by the Team Leaders and Coleman as those who might have questionable time, including Holloway, Jonny Boadu, and Jeremy Renard. (Strassle Decl. ¶¶ 14- 15.) Strassle

was unaware of the race of any of the contractors whose time he reviewed in this audit. (Strassle Decl. ¶ 14.) Plaintiff Holloway's timesheet showed that Holloway had reported that he worked twenty- four hours in one day. (Holloway Dep. 110:8-21; Holloway Timesheet, attached to Holloway Dep. as Exhibit 8.) Based on Strassle's review of Holloway's timesheets, Strassle had concerns that Holloway's timesheets were questionable. (Strassle Decl. ¶ 15; Holloway Dep. 120:12-121:3.) Strassle also reviewed Holloway's job performance and work ethic with Holloway's Team Leaders, including Leal, Montgomery, and Gboyega. (Strassle Decl. ¶¶ 16-18.) Holloway's Team Leaders did not recommend to Strassle that Holloway should be permanently hired. (Strassle Decl. ¶¶ 16-18; Leal Decl. ¶ 9.) Instead, Strassle received negative feedback from the Team Leaders regarding Holloway's performance and work ethic. (Strassle Decl. ¶ 17.). Strassle notified SOS that Schlumberger was cancelling Holloway's assignment to Schlumberger. (Strassle Decl. ¶ 21; Holloway Dep. 120:12-121:3.). SOS terminated Holloway's employment in late June or early July 2010. (Holloway Dep. 37:5-40:19; 71:11-21; Holloway EEOC Charge, attached as Ex. 5 to Holloway Dep.)

Strassle also reviewed Plaintiff Boadu's timesheets. According to the Defendants, Strassle concluded Boadu had questionable timesheets. (Strassle Decl. ¶ 15.) In addition to the questionable timesheets, Strassle reviewed Boadu's job performance and work ethic with Boadu's Team Leaders. (Strassle Decl. ¶ 16.) Boadu's Team Leaders did not recommend to Strassle that Boadu should be permanently hired. (Strassle Decl. ¶¶ 16-17.) Instead, Strassle received negative feedback from the Team Leaders regarding Boadu's performance and work ethic. (Strassle Decl. ¶ 17; Boadu Dep. 120:10-122:8.) Strassle notified SOS that Schlumberger was cancelling Boadu's assignment to Schlumberger. (Strassle Decl. ¶ 21; Strassle Email; Boadu

Dep. 131:12-20.). SOS terminated Boadu's employment in late June or early July 2010. (Boadu Dep. 19:6-20:1; 70:17-71:1; Boadu EEOC Charge, attached as Ex. 12 to Boadu Dep.)

On October 5, 2011, the Plaintiffs filed suit against the Defendants in Pulaski County Circuit Court alleging that the Defendants discriminated against them on the basis of their race in violation of the Arkansas Civil Rights Act and that the Defendants interfered with a contract or business expectancy in violation of Arkansas law. The Defendants timely removed the case to this Court based upon diversity of citizenship. The Defendants have filed motions for summary judgment of Plaintiffs' claims against them.

## II. <u>Standard for Summary Judgment</u>

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to

> demonstrate, *i.e.*, '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted)(brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

## III. <u>Discussion of the Law</u>

### A. Arkansas Civil Rights Act Claim

Plaintiffs claim they were discriminated on the basis of their race when they were terminated by the Defendants in violation of the Arkansas Civil Rights Act. "Disparate treatment claims under Title VII, the ADA, and the ACRA are analyzed in the same manner." *Evance v. Trumann Health Services, LLC,* 719 F.3d 673, 677 (8th Cir. 2013) (citing *St. Martin v. City of St. Paul,* 680 F.3d 1027, 1033 (8th Cir. 2012); *McCullough v. Univ. of Ark. for Med. Sciences*., 559 F.3d 855, 860 (8th Cir. 2009)). Under any of these theories, "an employee can survive the employer's motion for summary judgment in one of two ways. First, the employee can produce direct evidence of discrimination, that is, 'evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment

action.' Alternatively, if the employee lacks direct evidence of intentional discrimination, she may survive the employer's motion for summary judgment by 'creating the requisite inference of unlawful discrimination' through the familiar three-step burden-shifting analysis originating in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed. 2d 668 (1973)." *Russell v. City of Kansas City, Missouri*, 414 F.3d 863, 866 -867 (8th Cir. 2005) (quoing *Griffith v. City of Des Moines*, 387 F.3d 733, 735–36 (8th Cir. 2004)).

In the instant case, the Plaintiffs have not presented any direct evidence of discrimination. Therefore, the Court will analyze the disparate treatment claim under the McDonnell Douglas test. "The three-part McDonnell Douglas analysis begins with the plaintiff employee establishing a prima facie [case] of discrimination, followed by the employer articulating a legitimate, nondiscriminatory reason for its adverse employment action." *Russell*, 414 F.3d at 867 -868. To establish a prima facie case here, Plaintiffs must show that: (1) they were members of a protected class; (2) they were meeting their employer's legitimate expectations; (3) they suffered an adverse employment action; and (4) similarly situated employees who are not members of the protected class were treated favorably. *Gilmore v. AT&T*, 319 F.3d 1042, 1046 (8th Cir. 2003). If the Plaintiffs establish a prima facie case, the burden shifts to the Defendants to proffer a legitimate non-discriminatory reason for the adverse employment action taken against the Plaintiffs. If the Defendants are able to proffer a reason, the Plaintiffs must submit evidence sufficient to create a genuine issue of material fact that the reason offered was a mere pretext for discrimination.

**i. <u>Schlumberger</u>**

Schlumberger contends that the Plaintiffs cannot set forth a prima facie case because they

cannot prove that similarly situated employees were treated favorably. Assuming the Plaintiffs have made a prima facie case, Schlumberger has articulated a legitimate, nondiscriminatory reason for firing the Plaintiffs. Schlumberger contends that Strassle had suspicion or confirmation that the Plaintiffs stole time and/or lacked the recommendation for roll over to permanent hire from their field supervisors. To establish that these reasons were a pretext for unlawful discrimination, Plaintiffs must pass the rigorous test to show that they and more favorably treated employees were similarly situated in all relevant respects. [T]he individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Evance v. Trumann Health Services, LLC*, 719 F.3d 673, 678 (8th Cir. 2013) (internal quotations omitted).

Plaintiffs identify Jeremy Renard as a similarly situated non-minority employee who was treated more favorably than the Plaintiffs. According to the record, Renard was also identified by Strassle as an employee with questionable timesheets. However, upon request, Strassle received positive feedback from the Schlumberger Team Leaders regarding Renard's work ethic and performance and negative feedback regarding the Plaintiffs' work ethic and performance. After the recommendations, Strassle met with Renard regarding his timesheets. Strassle was convinced after this meeting that Renard did not knowingly steal time and would arrange to pay back the unworked time. Based upon the negative feedback from the Team Leaders regarding the Plaintiffs, Strassle did not request a meeting to discuss their timesheets.

Based upon this evidence, the Court finds that Renard was not similarly situated to the Plaintiffs. He received a recommendation from the Team Leaders and the Plaintiffs did not.

Therefore, different employment actions were taken with regard to the Plaintiffs. Further, the evidence is uncontroverted that during this process Strassle was unaware of the SOS contractors' race, with the exception of Domey, prior to making the decision to hire, release, or reconsider. (Strassle Decl. ¶¶ 14, 19, 21.). Strassle was only aware of Plaintiff Domey's race because he personally watched Domey clock in at the Schlumberger yard and then leave premises unaccompanied by his team. Schlumberger has also presented evidence that in 2010, Strassle rolled over at least four African-American SOS contractors – Joey Fisher, Galen Freeman, Cortez Pike, and Terry Templeton – to permanent Schlumberger positions based upon Team Leader input. (Milam Decl. ¶ 14; Strassle Decl. ¶ 23; see also Holloway Dep. 103:3-25; Domey Dep. 104:21-24.) Also in 2010, Strassle cancelled the temporary assignments of multiple white SOS contractors. (Milam Decl. ¶ 15; Strassle Decl. ¶ 23.). Based upon all of these reasons, Plaintiffs have failed to establish that Schlumberger's reasons for terminating Plaintiffs were a pretext for unlawful discrimination.

**ii. <u>SOS Staffing</u>**

SOS claims that the Plaintiffs cannot make a prima facie case of disparate treatment because they cannot prove that they were meeting their employer's legitimate expectations.

Plaintiffs admit that Strassle informed SOS that he was cancelling the Plaintiffs' assignment to Schlumberger because Plaintiffs stole time and performed poorly. The Plaintiffs each admit that SOS Staffing believed what Strassle reported. In other words, SOS believed that the Plaintiffs were not meeting their legitimate expectations. For this reason alone, Plaintiffs cannot prove a prima facie case of disparate treatment.

Moreover, even assuming the Plaintiffs have made a prima facie case, SOS has

articulated a legitimate, nondiscriminatory reason for firing the Plaintiffs. SOS terminated their employment for suspected timesheet fraud and poor work performance as reported to them by Schlumberger. Plaintiffs have failed to prove that SOS's reasons for terminating them were a pretext for unlawful discrimination.

**B. Tortious Interference with a Contract**

Plaintiffs allege that Schlumberger tortiously interfered with their contracts or business expectancy with SOS. In order to prove a claim for tortious interference with a contract or business expectancy, Plaintiffs must establish: (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship on Schlumberger's part; (3) intentional and improper interference by Schlumberger inducing or causing a breach or termination of the relationship; (4) resulting damage to the Plaintiffs; and (5) improper conduct. *Palmer v. Ark. Council on Econ. Educ.*, 40 S.W.3d 784, 791 (Ark. 2001). "[A] successful claim for interference with a contractual relation must allege and prove that a third person did not enter into or failed to continue a contractual relationship with the claimant as a result of the unauthorized conduct of the defendant." *Schueller v. Goddard*, 631 F.3d 460, 463 (8th Cir. 2011) (quoting *Palmer*, 40 S.W.3d at 791).

The evidence in the record clearly shows that Schlumberger was authorized to cancel SOS contractors' assignments with them. Schlumberger was also authorized to state the reason for the decision to cancel a contractor's assignment. Because the Court has found that there is insufficient evidence to support a claim of discrimination, there is no basis to find that Schlumberger's actions regarding the cancellation was unauthorized. Therefore, Plaintiffs' claim for tortious interference with a contract or business expectancy is dismissed.

**IV. Conclusion**

For the reasons set forth above, Defendant Schlumberger's Motion for Summary Judgment (ECF NO. 29) and Defendant SOS Staffing's Motion for Summary Judgment (ECF No. 32) are GRANTED. Plaintiffs' Motion for Recusal (ECF No. 35) is DENIED.

IT IS SO ORDERED this 13th day of February, 2014.

James M. Moody
United States District Judge